Good morning. We'll call the first matter for oral argument, and counsel can tell me if I'm pronouncing the name correctly. We've had some controversy in my chambers as to whether or not I'm pronouncing it correctly, the Naples v. MRSBPOL. And it's the name of the plaintiff that is at issue here that I was corrected on in chambers. Counsel, Mr. Altman? Good morning. May it please the court, my name is Michael Altman. I'm counsel on behalf of MRSBPOLLC. I'd like to reserve three minutes for rebuttal time. The Fair Debt Collection Practices Act was enacted in 1977 to prohibit debt collectors from using abusive or deceptive collection practices. It was also meant to level the playing field and promote lawful collection practices. Section 1692F prohibits the use of unfair or unconscionable means to collect a debt. So let's talk about appellate. You didn't want to finish reading this, did you? We're good. Wonderful. So as we think about whether there's appellate jurisdiction, there's the first joint filing, the second joint filing, right? So with regard, does the fact that the second joint filing states the parties have reached a conditional agreement on statutory damages cause any finality problems, given our jurisprudence in Verzilli? No, Your Honor, it's conditional upon this court affirming or reversing the decision below. The finding on liability in the district court was final, as was the finding on damages. If this court affirms, the damages are locked in at the stipulated amount. So there is finality to the district court's decision. Thus, pursuant to the Supreme Court's decision and Hallock, there is a final appealable order. Therefore, this court does have jurisdiction. There's no problem with the sort of a manufactured finality here? No, Your Honor, there's not. The finality is whether it was by stipulation or by a court issuing an order on damages that's not stipulated to, that was opposed. It's a final order, nonetheless, on damages and on liability. The only issue remaining in the district court is that of attorney's fees and costs. And the Supreme Court was very clear in Hallock that that issue may remain open. And, in fact, it's a final appealable order once the issue of liability and damages have been determined. In fact, in Hallock, the appellant missed his window to appeal because he waited to appeal after 30 days following the order on attorney's fees. Jurisdiction had been lost. So I think the issue of jurisdiction is fairly clear here that we have a final appealable order from the district court. All right. But you've also raised an Article III standing issue, correct? We have. The district court didn't touch it, but no matter, we have it before us. So let me ask, why don't the cases of St. Pierre and Douglas not resolve that issue? What impact do they have? First, the issue in St. Pierre, St. Pierre came up on a motion from a motion to dismiss. This is coming up from a motion for summary judgment. So what? The standard is different. The Supreme Court of Lujan made very clear that the standard to meet standing on a motion to dismiss on a 12b motion is different than the level on summary judgment. Plaintiff has to show that there was harm, be it actual harm or imminent harm. He's alleged that in the complaint, and we did not file a motion to dismiss, but he's presented no evidence whatsoever that the plaintiff was subject to being discovered as a debtor or subject to debt collection based upon the QR code on the letter. Douglas is distinguishable because Douglas concerned only an account number barely bare and printed visibly on the front of the envelope. The decision in Douglas made clear that they were deciding upon that. Douglas clearly, faintly did not get to a QR code, but that's not a very substantial step to have to take. Is it from what the facts were in Douglas and what we have here? I, with all due respect, Judge Smith, I disagree. That is a substantial and material distinction. In each instance, we're talking about a potential for injury, in fact, which would be the invasion of privacy that occurred here, wouldn't it? Well, we have to look at what the harm is under the statute. Under 1692 F, we're looking at an unfair or unconscionable act specifically as the legislative history makes clear whether any language or symbol on the outside of the envelope exposes the consumer as a debtor. And that's the question we need to answer is whether or not this QR code would expose the consumer as a debtor in Douglas. But isn't this case that really, I mean, it's the simple expedient here is an app anybody can download and scan it, right? Right, but we have to look at the probability that anyone would do that and actually scan the code in Waldron, which the dobear does it do with injury, in fact. As you're answering the question, the point you've just made, what does that have to do with injury, in fact? The likelihood that someone would do it. I mean, that's not the way we've measured it in any of our cases. I don't think that's the way the Supreme Court thought about it in Spokio and other cases. So where is that coming from? I believe that Spokio made clear you have to look at the injury or the harm that the statute was meant to prohibit if you were going to attach a per se standing for a statutory violation in here. But Spokale, like here, did involve an intangible injury, didn't it? It did. So where do you find some requirement that we look to probability, the probability of an actual invasion occurring? I believe some of this comes back to the proper interpretation of the statute. You have to find that there was probability that the injury Congress sought to prohibit could occur, did occur. Did we say that in Douglas? Douglas did not address standing at all, Your Honor. Douglas merely decided an issue of liability when a count number is printed directly above the consumer's name. And in Dobear, this court made very clear that the prior cases, Waldron and actually the district court case of Douglas, dealing with a QR code where those courts found that a QR code did not violate the FDCPA. Dobear made very clear that Douglas did not abrogate those decisions. But you want us to discount St. Pierre because of the procedural posture of that case? Yes, Your Honor. I think that in there, in that case, the plaintiffs had alleged that there could have been harm, and that was sufficient to withstand a 12B6 motion. But here we're dealing with a Rule 56 summary judgment motion, which Lujan makes clear is subject to a higher standard of proof, which plaintiffs in this case have not presented. They presented no evidence whatsoever that anyone has ever been exposed as a debtor based upon a QR code being scanned. And they presented no evidence that there is a possibility. There's no expert. In fact, the plaintiff herself testified that she couldn't conceive of how anybody could identify her as a debtor based upon the QR code. And I think it's important that Dobear made a clear distinction of Douglas, finding that that case dealt with whether there was a possibility of exposure of a debtor based upon the account number being printed on the envelope. Waldron, which Dobear made clear was not abrogated by Douglas. Waldron, which is a district court case out of, I believe, the Western District of Pennsylvania, made a clear distinction that a QR code by itself is not going to expose the person as a debtor. But there's a distinction between a QR code where you have to scan it and view it versus having it printed directly on the letter. And there is a probability aspect to the extent that it's possible that somebody could view a letter where it's in plain sight and make the connection that the person is a debtor. It's another step entirely removed that somebody would use a barcode scanner. We don't think about invasion of privacy as a general matter by probability. I mean, just because the probability is low with regard to a potential invasion of privacy, we don't say, well, we're not going to worry about that. Right. But that aside, we've talked about Douglas a bit today. I think your your adversary thinks that it's not an extra. It's not a particular extrapolation of Douglas to have Douglas fit within the facts here. My question to you is, as you analyze Douglas in order for us to come out where you think we should, do we have to overturn Douglas? Or are you basing your distinction on the QR code on the one hand versus the account number on the other? You do not have to overturn Douglas. Douglas is not controlling here. Douglas made very clear that it concerned a bare printing of the account number on the envelope, and it was deciding a liability on 1692 F8 based on the issues in that case. Daubert made clear that Daubert and Douglas both confirm that those cases did not concern a QR code. And Daubert made very clear that Waldron and the district court decision and Douglas concerted QR codes were not abrogated. You would agree, though, would you not that if we were to rule against you, that would be an extension? Rather of our Douglas decision, the question, the area of disagreement may be the extent, the degree of extension. It depends on how the you don't think Douglas is close. I don't think that Douglas is applicable here. No, I didn't ask you that. I said you don't think it was you don't think it's close. No, because putting putting the account number behind a barcode takes it to another level where, as Waldron explained, you would have to fill on the envelope. It's but it's not visible on the envelope. And I want to talk in my rebuttal time about the bona fide air defense. But I see my time is up. Well, if I may. Yes. I don't understand the point you've just made about the distinction you're drawing between the account number and the QR code. If if if our concern is stated in Douglas was the account number can. Create an avenue to access with regard to identification and therefore an invasion of privacy. When Judge Garis asked you about the accessibility of the QR code and the avenue that the QR code provides to identification and therefore invasion of privacy. Doesn't that. Bring the Douglas holding squarely within what we're talking about. Now, I understand that you're relying on probability as sort of the background of all your analysis. But it would appear that in both instances, you're able to one way or another to get to a person's identity and thus an invasion of privacy. So why isn't the rationale in Douglas clearly applicable here? Again, Your Honor. It's it. Douglas is about a number being printed on an envelope and found that in that circumstance, there was a probability of harm. The question is, how far attenuated can you get from that and still find viability? If there were X ray vision goggles that would allow somebody to see right through the envelope and read the letter. Would that subject my client to exposing the debtor's information to a third party? It's too far attenuated from reality. And there's been no evidence presented by the plaintiff that there's any harm or probability of harm from someone scanning illegally, illegally scanning another person's mail, reading a bar code, reading a bar code or QR code and making the connection that that number relates to debt collection. All right. And those are those are factual distinctions. And notwithstanding the clock, why don't you speak to the bona fide error defense? And that way we'll cut into your rebuttal time and it'll give your friends on the other side an opportunity in their argument. Sure. I'll be as succinct as possible. The bona fide error under the FDCPA finds that if there is liability and we disagree that there is here, but if there is liability, the debt collector may vitiate liability if the act was unintentional. And how was it unintentional? That's question number one. There was no intent to violate the FDCPA. Is that the nature and quality of intent that is required here? It is. And we've cited two cases saying as much. What about the Supreme Court's German case? The Supreme Court's German case found that that a misinterpretation of the FDCPA is not a bona fide error. Now, what we have here? With all due respect, Judge Gerritsen, no, this is not a misinterpretation of the FDCPA. MRS understood completely that they were prohibited from printing anything on the outside of the envelope that would expose the consumer as subject to debt collection. To the extent they made any... That's a legal error, right? No, to the extent, no, they understood... It's a mistake of fact. Yeah. It's either going to be a mistake of law or a mistake of fact. How do we put this within the box of mistake of fact? The mistake of fact is whether a QR code would actually expose the individual as being subject to debt collection. That's a liability question. That's legal. I think we understand your position and you can expand on it in your Bible. Thank you. We'll hear from Mr. Zellman. Good morning. May it please the court. My name is Yitzhak Zellman and I represent Donovan Naples, a respondent in this matter. In the past five years, this court has issued three separate opinions and claims arising under section 1692 F8 of the FDCPA. Those decisions are dispositive and foreclosed every single one of the claims raised by the appellant in their appeal before this court. Well, great. Then let's not talk about them. Let's talk about another case. Let's talk about. Well, you know, I mean, that's a pretty bold statement. That's great. So let's let's talk about Lujan. OK, if I'm pronouncing it right. But it doesn't matter. No one from the Supreme Court's here to tell me I'm wrong. Yeah. So when when Lujan speaks to your your adversary talked about state, you know, the distinction motion to dismiss state summary judgment stage. Lujan says it's summary judgment stage. You can no longer rest on mere allegations, but instead must set forth by affidavit or other evidence specific facts. In this instance, for you to establish Article three standing, do we have those facts and have they before us? Yes, Your Honor. It is undisputed that when the QR code in this case is scanned by any barcode scanner, it reflects the account number that this court in Douglas has already found to be a violation of the FDCPA. So, for example, at the pleading stage, I have to plead that in my complaint, saying that there was a barcode on the outside of the question letter and that one scan would reflect the account number which we pled. And at the summary judgment stage, I have to prove that I have to show the court that that would actually happen. But it is undisputed that that is what happened before the court. There's no question that if we were to scan the QR code, you'd see the account number. So that's our proof. The question is, is there a harm here? And absolutely. As this court held in Arisen and in Cicino v. Workout World, the improper disclosure of one's personal data is a recognizable injury, and the unauthorized dissemination of personal information causes an injury in and of itself, whether or not the disclosure of that information increased the risk of identity theft or some other future harm. So we maintain that we've absolutely established what we need to establish in terms of Article three standing. You know, stick with me for a minute. Section 1692 F says you can't use your business address, your business name on an envelope if it discloses you're in the debt collection business, right? Now, it seems to me you could go on to Google and look at your adversaries, look it up and say, hey, this guy is in debt collection. This letter must be from a debt collector. So the same thing deals with a QR code. You can't tell anything from looking at it, but if you go the extra step, you can find out it's an account code or whatever it is. Is the QR code any different here than a business name that doesn't identify right on its face, that it has something to do with debt collection? We believe so, Your Honor. And that's because 1692 F8 prohibits the display of any words or symbols on the outset of the collection letter. And then it gives that exception for the business, for the debt collector's address and business name, if it will not reflect that the business name is related to debt collection. But again, the plain language of the statute still prohibits any words or symbols. And then the only time that we can permit words or symbols is if, you know, prohibiting those words or symbols would violate the absurdity doctrine, which is where the benign language exemption that the respondent, the appellant argues for comes from. It's a it's a birth child of the absurdity doctrine, which says we apply the words of a statute. That is our sole function of this court. We apply a word to the statute as it is written, unless to do so would result in an absurd result. And to prohibit an account number, as this court did in Douglas or an unencrypted QR code containing that exact same account number is not an absurd result. So in terms of the Article three standing arguments, Your Honor, this court articulated in Cezino versus workout world is just a year or two ago. The the test we use to determine whether or not this article three standing and that test is straightforward. It's simply where a plaintiff's intangible injury has been made legally recognizable through a democratic process and the injury closely relates to a cause of action traditionally recognized at American court standing issue. Really come down to whether the injury that you have pled is a concrete injury. I'm sorry. I don't necessarily understand my question. Answer is yes. Doesn't destroy your softball. Doesn't Spokane use the language concrete injury? Yes, Your Honor. So what is the Naples concrete injury, Mr. Naples? Concrete injury is a dissemination and disclosure of her lawfully protected information. And Congress has long provided plaintiffs with the right to receive redress for unauthorized disclosures of information. That in Congress's judgment out to remain private. That is what this court said in a Nickelodeon back in 2016. And in a Google said, did we get it right in Douglas? I noticed there's some cases that criticize this. I mean, we get it wrong every now and again. Not that much. Well, I do. I get it wrong sometimes. Maybe you guys don't. You probably read those criticisms. What's your reaction to the attack or analysis or lack thereof? Those courts are from outside the Third Circuit within the Third Circuit. There's been nine district court opinions that have extended the Douglas decision to QR codes or barcodes. Every single one unanimously has agreed that, you know, the Douglas decision extends logically to QR codes or barcodes. And I don't believe that the Douglas decision was wrong because, again, the only language that should be on the outside of the question letter. You know, it's stuff that would, if we prohibit it, would be absurd. The FTC contemplates that we're going to mail collection letters out. Sometimes it requires it, such as under 1692 G, when you've got to send the validation. But did Douglas get it right? Do we get it right in Douglas? Absolutely, Your Honor. And the reason why I got it right is because it is simply it's it says any words or symbols on the outside of the question letter prohibited. Obviously, the consumer's address or the consumer's name is not written in the statute. But it would be absurd to prohibit that because we can't mail something in the Postal Service without a name or address. But an account number, which is, you know, specific to that specific debtor, that is not absurd to prohibit. Just like it wouldn't be absurd to prohibit the full number of the debtor or their Social Security number or any other protected information. So I do think that this court got it right in Douglas and in St. Pierre when it found Article 3 standing and in Daubert when it rejected a bona fide error defense for this exact. Careful, one day you're going to say that we did something wrong when you're standing at the podium, so you should quit while you're ahead. So let me ask you about the bona fide error defense that your adversary invokes. First, help me with the distinction between the mistake of law and mistake of fact. I mean, part of your argument is what they're arguing is, in fact, not a mistake of fact. So there should be no invocation of the doctrine. Give me an example in this circumstance of what a mistake of fact. Certainly, as the Supreme Court in Germany said, the bona fide error defense is meant to apply to factual or clerical mistakes. So first, the bona fide error defense assumes there was an error in the first place. It was no error. They intended to put the QR code on the outside of the envelope and they didn't encrypt it like they later did to protect that information. So, for example. Are you saying that's essentially an admission that the bona fide error defense can't apply because they obviously changed their position? What I'm saying is they argue that doing this is required for us to track our mail and it's industry practice to do so, but there is a way to do it that you didn't have to do this. And in fact, the two decisions cited in the appellant's brief, Annenkober versus Van Roo and In Re's State of Caruso, which rejected the FAA claims in those cases, were specific tracking numbers assigned by Rebspring and the mail vendor for those pieces of mail, like a UPS tracking code or a FedEx tracking code. And it didn't include the account number. But in this case, they did include the account number more than two months after this court issued their Douglas decision. But you just said in response to Judge Greenaway's question, in the course of responding to Judge Greenaway's question, there was no error. You don't need to say that. And in fact, if we were at the district court at the pleading stage, they are saying there was an error. Why don't you simply say, assuming they're correct, the error was a legal error, not a factual error, and therefore it doesn't help them here. Yes, Your Honor. I was actually about to get to that. I was saying the first point was it assumes there's an error, but the second point is, in this case, it's only a legal error where they say that we did not conceive that putting this account number is a symbol that would expose the consumer to being identified as being subject to declension, I think, is the words that they use. But that's not what the statute says. The statute forbids and prohibits the display of any words or symbols. It doesn't have the qualifiers that they keep throwing after those words. So in terms of they didn't believe that this would be a violation of the law under 1692 F. 8 and after Douglas, that's a legal conclusion, Your Honor. It's a legal mistake. I don't understand how it could be a factual one. Well, and doesn't German come to your aid on this question? I firmly believe it does, Your Honor, in terms of where German says, you know, this is meant to apply to clerical mistakes. If they wanted to say we didn't need to put the QR code on there, we told our mail vendor to take it off, but they left it on there anyway, that would be a bona fide error. But they testified at their deposition that this is not the case. They wanted this QR code. It was put on there on purpose to help them track their mail. But, again, when they wanted to track their mail, they included an account number in there, even though they really should not have done that. I can address liability under Douglas or continue talking about Article III standing. You could go full circle. Do we have jurisdiction? We take no position as to whether or not the finality of the lower court's stipulations and judgments give this court jurisdiction. I know that we had a number of conversations with the lower court in terms of how to make this final so that the case could be brought up on appeal. Otherwise, what would have had to happen is we would have to file our motion for attorney's fees and costs on an FDCPA. Then we would have to do this appeal, and then we would have to go back to the lower court for another round of attorney's fees and cost petitions. And I think that's why the lower court said, all right, you know, you have a judgment here. The judgment is final. It's not changing depending on what happens in the appeal. So, you know, we thought that would work. Well, what I'm saying is, you know, we were trying to do whatever the court wanted us to do. If the court wants to send us back down to do that attorney's fee petition and cost and then come back here to argue this case all over again, we're okay with that, but we don't believe it's necessary. Well, I don't think we're okay with that, actually. I don't know that that would be worthwhile. You're judging me to waste skepticism. Unless this panel has any further questions for me. Thank you very much. Thank you, Your Honors. Your Honors, on rebuttal, I'd like to emphasize this court to look back at page 35 of our initial brief, our conclusion, the purpose of the Fair Debt Collection Act. One second. I'm colorblind, right? No, you don't. Anyway, yes, 35. Go ahead. I'm so sorry. There's a big picture issue here. The purpose of the Fair Debt Collection Practices Act is to promote consumer protection, to promote fairness, to promote legal, lawful debt collection. It is not to promote an entrepreneuring plaintiff's attorney in a statute that allows for shifting attorney's fees. An interpretation of 1692F8 that allows for a QR code, which is floating by a stamp, to be determined to be unfair and unconscionable. Debt collection practices does nothing to promote the purpose of the FDCPA to protect consumer rights. And that's why we have – Same argument made in Douglas? The same argument was made in Douglas. That's the point. It's a policy argument that, you know, we got to do something about these so-and-so plaintiff's lawyers. But in Douglas, the number was provided directly on the envelope, and it is a material difference because it was available to the public in plain view without more. Here it is not available to the public in plain view without more. It's behind a barcode, which was for the purpose of return mail. My client did not put that – put the QR code or their internal account number on the letter to expose this person as a debt – as subject to debt collection, nor did they ever conceive that in the world of endless possibilities, there was a possibility that it would. They put it on there to effectuate return mail. And here we are too far removed from the real world where there's no evidence, and plaintiff has presented no evidence that anyone is out there stealing mail, illegally scanning barcodes, and figuring out that the contents thereof concern debt collection. And I urge you to think about the purpose, the broader purpose of the FDCPA in considering this decision and the fact that there are no facts that support plaintiff's position that there has been any harm or that she has been exposed as a debtor. Thank you. Thank you. Thank you to both of the counsel. We'll take the matter under advisory.